UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BARBARA PERRY,

    Plaintiff,

v.

PERDUE FOODS LLC, et al.,

    Defendants.

Case No. 17-cv-03502-JST

**ORDER GRANTING DEFENDANT PERDUE FOODS LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Re: ECF No. 72

    Before the Court is Defendant Perdue Foods LLC's motion for partial summary judgment. ECF No. 72. The Court will grant the motion.

**I.    BACKGROUND**

    Beginning on October 20, 2014, Perdue employed Plaintiff Barbara Perry as a general labor production worker at its Petaluma Poultry facility. ECF No. 73-3 at 8, 61. This action arises following Perry's suspension on November 9, 2015, and her termination on November 20, 2015.

    Perry asserts six claims for relief in her complaint, all under California's Fair Employment and Housing Act ("FEHA"): (1) harassment; (2) failure to prevent harassment, discrimination, and retaliation; (3) disability discrimination; (4) failure to provide reasonable accommodation; (5) failure to engage in a timely, good faith, interactive process; and (6) retaliation. ECF No. 1 at 9-14. Perdue seeks summary judgment on the last four of these claims. ECF No. 72. Perry's first two claims for harassment and failure to prevent harassment, discrimination, and retaliation are not at issue, and the Court therefore does not include in this order facts relevant only to those claims.

    In November 2014, Perry obtained a note from her physician indicating that she was taking hypertension medication that "may cause her to use the restroom more frequently." ECF No. 73-3

at 67. Perry estimated that she needed to urinate "at least once every hour, hour and a half." *Id.* at 21. After her supervisor received her doctor's note, he allowed her to use the restroom when needed. *Id.* at 55. Perry also suffered from a left shoulder injury for which she received a workers' compensation settlement in 2018.[1]

Prior to her termination, Perry received written warnings regarding her attendance. Perdue's policy allows no more than four attendance points in a rolling twelve-month period and provides that eight points would result in termination. *Id.* at 71. Perdue received a corrective action notice stating that she had accumulated 11.0 attendance points on October 15, 2015, and another notice on October 27, 2015, that she had accumulated 11.5 attendance points. *Id.* at 71-72. She testified that when she received these notices, she understood that she could be terminated if she did not improve her attendance. *Id.* at 33, 35.

Perry testified at her deposition that, on November 6, 2015, she "tripped and fell" after he "boot got stuck on the rug" as she "was coming out of the women's bathroom," and that she hurt her lower back and right shoulder. *Id.* at 36-38. Perdue presents contrary evidence from its on-site safety and security manager, who testified that he reviewed footage from "an observation camera that covers the portion of the break room where Miss Perry claims to have fallen," and concluded that "it appears in the video that Miss Perry walks out of the bathroom and sits on the floor." ECF No. 73-6 at 23-24. When asked if he had a copy of the footage, he testified that he did not. *Id.* at 23.

After the incident, Perry was assisted by her supervisor, Perdue's on-site nurse, and Perdue's on-site safety and security manager. ECF No. 73-3 at 39-41; ECF No. 73-6 at 11. She asked to go to the emergency room because she "was in a lot of pain," but the nurse told her she needed to first seek treatment at Concentra, Perdue's designated workers' compensation provider. ECF No. 73-3 at 42-44. Perdue's policy allows treatment by a different provider, but only with prior notice to Perdue. *Id.* at 63. Perry does not recall telling Perdue that she would rather be

---

[1] Evidence of this award was not submitted as part of the summary judgment briefing. However, Perdue previously submitted a copy of the stipulated workers' compensation award with one of its case management statements. ECF No. 96-1.

2

treated by a different physician. *Id.* at 44-45. She declined a ride to Concentra and instead drove herself. ECF No. 73-3 at 46; ECF No. 73-6 at 14-15.

Perdue testified that Dr. McCaffrey at Concentra "checked my injuries, and she relieved me to go to get pain medication at the ER." ECF No. 73-3 at 48. However, Dr. McCaffrey testified that she did not examine Perry "except standing in a doorway looking across at her." ECF No. 73-7 at 9. She testified that she "did not have time to do an exam" because Perry said she needed pain medication from an emergency room and then "walked out of the room past me. She left AMA [against medical advice]. . . . I would normally try to help somebody. But she seemed intent on leaving the clinic. . . ." *Id.* at 8-9.

After leaving Concentra, Perdue drove herself to the emergency room. ECF No. 73-3 at 49-50. The medical record from the NorthBay Medical Center states that Perry checked in at 10:25 a.m. and complained of "right hip pain after slipping on concrete at work." ECF No. 73-8 at 9, 11. She described the degree of pain at onset and at the time of evaluation as "moderate" and denied having any neck or back pain. *Id.* at 11. The examining provider made a differential diagnosis of "hip contusion, hip sprain, fall" and ordered an x-ray to rule out a bone injury. *Id.* at 12. Perry "eloped prior to xray." *Id.* She checked out at 11:30 a.m. *Id.* at 9.

When Perry reported to work the following Monday, November 9, 2015, she was suspended. ECF No. 73-3 at 52. She obtained treatment later that day at Concentra, complaining of "right ankle and right hip pain/swelling." ECF No. 73-9 at 11. She was diagnosed with "Contusion of right hip and thigh" and "Right ankle sprain." *Id.* at 12. The injury was classified as "mild," with "no treatment need." *Id.* She was released "to regular work as per right hip and ankle. Patient has ongoing left shoulder injury." *Id.*

While Perry was on suspension, Perdue's local human resources manager, Barbara Ridilla, investigated the November 6 incident. ECF No. 73-5 at 18-23. Ridilla considered Perry's failure to seek medical treatment following the November 6 incident to be insubordination, although she could not point to any specific policy provision that required Perry to seek such treatment. *Id.* at 17. She also concluded that Perry faked her injury to attend her husband's medical evaluation regarding his own workers' compensation claim against Perdue. *Id.* at 20. Perry's supervisor had

3

previously denied Perry's request for time off to attend that evaluation on the afternoon of November 6 because she had no available time off. ECF No. 73-6 at 18-19. The attorney who was handling her husband's workers' compensation claim on behalf of Perdue states in a declaration that Perry called him, shortly before her husband's evaluation was scheduled to begin, to ask for directions, and that she told him that she was going to attend the evaluation. ECF No. 73-12 ¶¶ 2, 7-8. Perry disputes this account and has presented a declaration from her husband stating that she did not attend his medical exam on November 6, 2015, and that, in fact, his scheduled exam was postponed and did not occur that day. ECF No. 103 at 25.[2]

Ridilla reported her conclusions to Gary Miller, the director of human resources based at Perdue's headquarters in Maryland. ECF No. 73-5 at 18; ECF 73-10 ¶ 2. Miller made the ultimate decision to terminate Perry. ECF No. 73-5 at 18. He testified that he based this decision on Perry's violation of four policies: not being truthful, poor attendance, having a confrontation in the plant, and "borderline insubordination." ECF No. 73-4 at 8-9. First, he determined that Perry was being dishonest about going to her husband's medical evaluation instead of returning back to work. *Id.* at 10-19. Second, Miller noted that Perry "had missed an excessive amount of time from work and had accumulated over her employment period at various times occurrences that well exceed the total which a person will be terminated. She had also been warned about her attendance being poor." *Id.* at 20. Third, Miller noted that Perry "had gotten into a very serious argument with an associate" that "was very disruptive at the time in the workplace." *Id.* at 21-22. Finally, Miller stated that he received reports that Perry "had a pattern of behavior that was very argumentative and disrespectful to her supervisors or her supervisor and the HR manager, others that worked around her." *Id.* at 23. He said that it "was described to me . . . that she was – she did not respect the traditional decorum of supervisor to associate. She didn't respect that and would act in an unprofessional manner when having communications with her supervisors and others, and it was becoming a growing disruption." *Id.*

---

[2] Perry's husband's declaration is sufficient to create a material dispute on the question of whether Perry attended her husband's medical exam that afternoon. The Court therefore need not consider the portions of Perry's declaration to which Perdue objects, and it does not reach the question of whether Perry's declaration must be rejected as contradictory to her deposition testimony.

4

Perry was terminated on November 20, 2015. ECF No. 73-3 at 73. She does not remember having any contact with anyone from Perdue between the time of her suspension and the date of her termination. *Id.* at 52-53. Her termination letter states that she was being terminated for "Multiple Violations of Policies." *Id.* at 73. A "separation checklist" submitted into evidence by Perry has only one box checked for the reason for termination: "Discharged-Insubordination." ECF No. 103-1 at 8.[3] Among other boxes left unchecked was "Discharged-Attendance." *Id.*

## II. LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if there is sufficient evidence "such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When deciding a motion for summary judgment, the court must draw "all justifiable inferences" in the nonmoving party's favor and may not weigh evidence or make credibility determinations. *Id.* at 255.

Where the party moving for summary judgment would bear the burden of proof at trial, that party "has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). Where the party moving for summary judgment would not bear the burden of proof at trial, that party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough

---

[3] Perdue correctly observes that Perry has not authenticated this exhibit. Nonetheless, because Perry "is acting pro se in opposing the motion for summary judgment, the Court affords [her] maximum leniency permissible under the circumstances; it will consider the documents [she] has submitted (even though not formally authenticated) and all deposition testimony in the record that might be construed in [her] favor." *Jefferson v. City of Fremont*, 73 F. Supp. 3d 1133, 1138 (N.D. Cal. 2014). In addition, as discussed below, even considering all of Perry's evidence, "the Court finds that no disputed material fact would exist to preclude summary judgment in [Perdue's] favor. More simply, admission of this evidence would not undermine the Court's ultimate ruling on the pending motion[] for summary judgment." *Fidge v. Lake Cty. Sheriff's Dep't*, No. 13-cv-05182-YGR, 2015 WL 3919819, at *2 n.3 (N.D. Cal. June 25, 2015), *aff'd*, 683 F. App'x 605 (9th Cir. 2017).

evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party satisfies its initial burden of production, the nonmoving party must produce admissible evidence to show that a genuine issue of material fact exists. *Id.* at 1102-03. If the nonmoving party fails to make this showing, the moving party is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## III. DISCUSSION

### A. Disability Discrimination

To establish a prima facie case of disability discrimination under the FEHA, a plaintiff must show "that he or she (1) suffered from a disability, or was regarded as suffering from a disability; (2) could perform the essential duties of the job with or without reasonable accommodations, and (3) was subjected to an adverse employment action because of the disability or perceived disability." *Sandell v. Taylor-Listug, Inc.*, 188 Cal. App. 4th 297, 310 (2010). If the plaintiff establishes a prima facie case, then "the burden shifts to the employer to rebut the presumption by producing admissible evidence . . . that its action was taken for a legitimate nondiscriminatory reason." *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 355-56 (2000). If the employer meets that burden, then "[t]he plaintiff must then have the opportunity to attack the employer's proffered reasons as pretexts for discrimination, or to offer any other evidence of discriminatory motive. . . . The ultimate burden of persuasion on the issue of actual discrimination remains with the plaintiff." *Id.* at 356. To prevail, the plaintiff must show that his or her disability or perceived disability "was a substantial factor motivating the adverse employment action." *Harris v. City of Santa Monica*, 56 Cal. 4th 203, 225 (2013). "If a rational trier of fact could, on all the evidence, find that the employer's action was taken for impermissibly discriminatory reasons, summary judgment for the defense is inappropriate." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994).

The Court assumes without deciding that Perry has stated a prima facie case, but her discrimination claim nonetheless fails. It is not clear whether Perry contends that she is disabled because of her hypertension, her shoulder injury, and/or her hip and leg injury sustained as a result

6

of a fall on November 6, 2015. However, she has not presented evidence that any of these was a substantial motivating factor in her termination. There is no evidence of direct discrimination, or any evidence that Perry's hypertension or shoulder injury played any role in the termination decision. Nor has Perry presented sufficient evidence of pretext based on the November 6 incident. She presents some evidence that she did not actually attend her husband's medical evaluation, but she has "presented no evidence that [Perdue] did not honestly believe" that she did. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002). "In judging whether [an employer's] proffered justifications were 'false,' it is not important whether they were objectively false (e.g., whether [the plaintiff] actually lied). Rather, courts only require that an employer honestly believed its reason for its actions, even if its reason is foolish or trivial or even baseless." *Id.* (internal quotation marks and citation omitted); *see also Guz*, 24 Cal. 4th at 358 (employer's "true reasons [for adverse employment action] need not necessarily have been wise or correct," as long as they were "facially unrelated to prohibited bias"). Moreover, it is undisputed that Perry had documented attendance problems, including receiving a written corrective action notice ten days before the November 6 incident indicating that she had more than the allowable number of attendance points, and Perry herself testified that she knew her attendance was problematic and might be cause for termination. Finally, Perry offers no evidence to counter Miller's testimony that she was terminated for insubordination. Based on all of the evidence presented, no reasonable jury could conclude that disability was a substantial motivating factor in Perdue's decision to terminate Perry. The Court will therefore grant Perdue's motion for summary judgment on this claim.

### B. Failure to Provide Reasonable Accommodations and Failure to Engage in Interactive Process

"The elements of a failure to accommodate claim are: '(1) the plaintiff has a disability under the FEHA, (2) the plaintiff is qualified to perform the essential functions of the position, and (3) the employer failed to reasonably accommodate the plaintiff's disability.'" *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 498 (9th Cir. 2015) (quoting *Scotch v. Art Inst. of California-Orange Cty., Inc.*, 173 Cal. App. 4th 986, 93 (2009)). An employer also faces liability if it "fail[s]

to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, *in response to a request for reasonable accommodation* by an employee or applicant with a known physical or mental disability or known medical condition." Cal. Gov't Code § 12940(n) (emphasis added).

There is no evidence in the record that Perry requested any accommodation other than being able to use the restroom more frequently than normal due to her hypertension medication – an accommodation that Perry herself testified was granted. ECF No. 73-3 at 55. Perry argues in her opposition that Perdue "would pick its days when the injury accommodation would be extended. But for the most of the days while I was at Perdue, Supervisor Javier would deny myself trips to the bathroom." ECF No. 103 at 12. However, she presents no evidence to support this assertion. She cites to several pages of her own deposition for support, *id.*, but the cited testimony states only that she was taking medication for hypertension that required frequent trips to the restroom "at least once every hour, hour and a half." ECF No. 73-3 at 18-21. She has not introduced evidence that Perdue denied the accommodation she requested, nor has she introduced evidence that she requested any other reasonable accommodation. Perdue therefore cannot be liable for failing to provide reasonable accommodations. As the California Court of Appeal has noted, "the employee can't expect the employer to read his mind and know he secretly wanted a particular accommodation and sue the employer for not providing it." *Avila v. Cont'l Airlines, Inc.*, 165 Cal. App. 4th 1237, 1252-53 (2008) (internal quotation marks, alteration, and citation omitted). Nor, where the evidence shows that Perdue "provided exactly the accommodation [Perry] requested," can Perdue be "liable for failure to engage in a timely, good faith, interactive process." *Davis v. Phillips 66*, No. 17-cv-00128-JST, 2017 WL 6558697, at *7 (N.D. Cal. Dec. 22, 2017). Summary judgment to Perdue is proper on both of these claims.

**C.  Retaliation**

"To establish a prima facie case of retaliation under the FEHA, a plaintiff must show '(1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action.'" *Scotch*, 173 Cal. App. 4th at 1020 (quoting *Yanowitz v. L'Oreal USA, Inc.*,

36 Cal. 4th 1028 (2005)). Once the employee establishes a prima facie case under a retaliation theory, the burden shifts to the employer to "rebut the presumption by producing evidence that it had a legitimate, nondiscriminatory reason for its adverse employment action." *Santillan v. USA Waste of California, Inc.*, 853 F.3d 1035, 1042 (9th Cir. 2017). If the employer satisfies this burden, the employee must show that the reason "constitutes mere pretext" or "must produce other evidence of intentional discrimination." *Id.*

Perry has failed to establish a prima facie case of retaliation. The only protected activity in the record was her request for accommodation based on her hypertension medication. Perdue granted that accommodation, and there is no evidence that a causal link exists between her making that request and her termination. In addition, even if Perry had established a prima facie case, her claim would still fail because, as discussed above, she has not presented sufficient evidence that Perdue's stated nondiscriminatory reasons for her termination were pretextual. The Court will grant summary judgment to Perdue on this claim.

## CONCLUSION

Perdue's motion for partial summary judgment is granted. Perdue is entitled to judgment on Perry's third through sixth claims for disability discrimination, failure to provide reasonable accommodation, failure to engage in the interactive process, and retaliation in violation of the FEHA.

**IT IS SO ORDERED.**

Dated: July 19, 2019

JON S. TIGAR
United States District Judge